## H. G. ODDEN v. ROBERT JAMISON and Others.[1]

June 4, 1915.

Nos. 19,231—(155).

**Sale — election to rescind — reasonable time.**

Where the purchaser of stock in a corporation reserves the right to rescind

[1] Reported in 152 N. W. 871.

his purchase if, upon investigating the corporation, he should elect to do so, and obtains an undertaking, executed by sureties, that, in such event, the amount paid for the stock shall be refunded, which undertaking contains no limitation upon the time within which he shall exercise his right to rescind, he must make his investigation and rescission within a reasonable time or the sureties will be released. A delay of more than 10 months *held* unreasonable under the circumstances of this case.

Action in the district court for Yellow Medicine county against the receiver of the Sterling Securities Corporation, G. W. Hannah and J. D. Pedersen. The action was tried before Qvale, J., who granted a motion to dismiss the action as against the receiver, and denied a motion to dismiss the action as to the other defendants, and a jury which returned a verdict for the amount demanded. The motion of the defendants for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Bert O. Loe,* for appellant.

*John A. Dalzell* and *Allen & Fletcher,* for respondents.

TAYLOR, C.

At the trial, the action was dismissed as against the receiver, but was submitted to the jury as against defendants Hannah and Pedersen, and a verdict was returned for plaintiff. Thereafter the court rendered judgment for defendants Hannah and Pedersen notwithstanding the verdict, and plaintiff appealed therefrom.

The following is a brief outline of the facts: In May, 1913, one D. R. Morrow, an agent of the Sterling Securities Corporation, was at the village of Echo, in Yellow Medicine county, engaged in selling the capital stock of that corporation. He represented that the company had a series of banks in the states of Wisconsin, Minnesota and Dakota from which they derived large profits, and that they were about to establish a state bank at Echo and wanted a large number of local people to become interested with them. He also represented that if any stockholder should become dissatisfied, he could surrender his stock, and the company would refund the amount paid therefor. The defendants Hannah and Pedersen and about 25

others residing at or near Echo purchased stock. On May 30, Morrow, accompanied by defendant Hannah, went to plaintiff to sell him some stock. No sale was consummated at this time, but they arranged to meet him at defendant Pedersen's drug store on the following day. At the meeting at the store on the following day, plaintiff purchased stock to the amount of $525; but, as a part of the transaction, insisted upon and obtained the signatures of Hannah and Pedersen to the following writing: '

"May 31, '13.

"This is to certify that H. G. Odden may at any time upon his going to Mpls. & investigating receive his entire amt. of $525.00 back upon his request.

"Sterling Sec. Corp.,

"Per D. R. Morrow, Agt.

"G. W. Hannah,

"J. D. Pedersen."

On June 5, 1913, plaintiff's certificate of stock was issued and mailed to him from the office of the company at Minneapolis. On June 12, 1913, the stockholders residing in the vicinity of Echo held a meeting, which was attended by the president of the company, and at which arrangements were made to organize the bank. The president explained the purpose of the company, and, in this connection, stated that any stockholder could go to its office in Minneapolis and investigate its affairs, and, if they were not found to be correct and as represented, that his money would be refunded. Plaintiff attended this meeting and was selected as one of the incorporators and directors of the bank. On June 18, 1913, the articles of incorporation of the bank were duly executed by plaintiff and the other incorporators, and plaintiff was named therein as one of the directors. Thereafter the company began the erection of a bank building, and constructed the walls and roof thereof, but it had not been completed at the time the company ceased doing business. The company declared a dividend of 10 per cent in January, 1914, but never paid it. In the early part of April, 1914, the company sent out notices of a stockholders' meeting to be held at its office in Minneapolis on April 14, 1914. Plaintiff and Hannah at-

tended this meeting; Pedersen did not. At the meeting it became known that the company was in financial difficulties. At the close of the morning session, plaintiff called Hannah and the president of the company aside, presented his agreement and asked for his money. The president made a statement to the effect that plaintiff would get his money, but that the matter could not be attended to at that time. Plaintiff subsequently made a demand upon Hannah and upon Pedersen. On April 27, 1914, the company went into the hands of a receiver, and shortly thereafter plaintiff brought this action.

The trial court was of the opinion that plaintiff had not made his investigation and election within a reasonable time, and was not entitled to recover from defendants Hannah and Pedersen for that reason.

Plaintiff's transaction was with the company, and neither Hannah nor Pedersen received any part of the money paid by him. At the most they were mere sureties that plaintiff's money would be refunded if, upon going to Minneapolis and making an investigation of the company, he should elect to rescind his contract. He contends that they are in the position of sureties upon an absolute obligation to pay money on demand, and that delay in enforcing collection thereof does not release them from liability. But plaintiff was not making a loan to the company, and the writing is not an absolute obligation to repay the money on demand, or at all. Plaintiff was making a contract for the purchase of stock in a corporation, concerning which he knew little or nothing, and he took the precaution to reserve the right to investigate the company and to rescind his contract in case he should so elect after making such investigation. Defendants' undertaking, giving it the construction most favorable to plaintiff, went no further than to secure to him the right to make such investigation and to rescind if dissatisfied with the state of affairs disclosed thereby. The writing imposed no duty upon either the company or the defendants to take any further action in the matter. The contract was fully executed and the transaction closed, unless plaintiff saw fit to take steps to annul it.

He could do so or not as he chose. Unless he elected to disaffirm it, the contract remained final and binding.

The writing executed by defendants contains no limitation upon the time within which plaintiff could demand a rescission, and, under such circumstances, the law imposed upon him the duty to exercise his option within a reasonable time, and, in case he elected to rescind, to give notice thereof within such reasonable time. He was entitled to whatever time was reasonably necessary, under all the circumstances, to enable him to go to Minneapolis and inform himself concerning the character and prospects of the company; but, if he failed to exercise his right to investigate and disaffirm for an unreasonable length of time, such delay constituted a waiver of such right, and he is deemed to have elected to abide by the contract.

Plaintiff made his contract on May 31, 1913. Thereafter he took part in incorporating the bank and became one of its directors. In September he was at Minneapolis for two days attending the State Fair, but did not visit the office of the company, nor make any investigation or inquiry concerning it. On April 14, 1914, he attended a meeting of the stockholders, and, learning that the company was embarrassed, he then for the first time declared himself dissatisfied and attempted to rescind the contract. The defendants were his friends and neighbors, and were mere gratuitous sureties who had manifested their good faith by investing a much larger amount than he in the same stock. Good faith toward them required him to make his investigation and rescission with reasonable promptness. He could not wait indefinitely, and take the benefit of the contract if it turned out to be profitable, and hold the defendants if it turned out otherwise. This appears to have been the theory, upon which he proceeded, but it cannot be sustained. There was no excuse for the long delay, and it was obviously prejudicial to the defendants. The conclusion of the trial court was clearly correct, and the judgment is affirmed.